IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MARY BONNER, administrator of the Estate of Barry Bonner,**

**Plaintiff,**

**v.**

**UNION PACIFIC RAILROAD COMPANY, JOHN CLEMONS, and other unknown railroad policemen,**

**Defendants.**                                    No.  06-226-DRH

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. Introduction

On December 5, 2005, Plaintiff Mary Bonner, as administrator of the Estate of Barry Bonner, filed suit in the Circuit Court of St. Clair County, Illinois against Defendants Union Pacific Railroad Company ("Union Pacific"), John Clemons, and other unknown railroad policemen. (Doc. 2.) The three-count Complaint alleges that Defendants wrongfully and negligently caused the death of Barry Bonner. On March 29, 2006, Defendants filed a notice of removal based on this Court's diversity jurisdiction. (Doc. 5.) This matter is now before the Court on Defendants' motion for summary judgment. (Doc. 24.)

### II. Background

On the night of November 13, 2005 at approximately 11:25 p.m. Officer

1

John Clemons shot and killed Plaintiff's husband, Barry Bonner ("Decedent"). Defendant Clemons is a railroad policeman employed by Union Pacific to patrol the railraod under McArthur Bridge in East St. Louis, Illinois. Many of the facts surrounding the shooting are disputed and will be discussed below. The question before the Court is whether any material facts are actually in dispute, which would prevent the entry of summary judgment in Defendants' favor.

### III. Motion for Summary Judgment

#### A. Legal Standard

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Oats v. Discovery Zone*, **116 F.3d 1161, 1165 (7th Cir. 1997)** (citing *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986)**). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, **123 F.3d 456, 461 (7th Cir. 1997)** (citing *Celotex*, **477 U.S. at 323**). In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.*, **877 F. Supp. 1114, 1124 (N.D. Ill. 1995) (Castillo, J.)**. The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. *Regensburger v. China Adoption Consultants, Ltd.*, **138 F.3d 1201, 1205 (7th**

**Cir. 1998)** (citing *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986)**).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings. Rather, she must show through specific evidence that an issue of fact remains on matters for which she bears the burden of proof at trial. *Walker v. Shansky*, **28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd*, **51 F.3d 276** (citing *Celotex*, **477 U.S. at 324**). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, **477 U.S. at 249-50** (citations omitted); *accord* *Starzenski v. City of Elkhart*, **87 F.3d 872, 880 (7th Cir. 1996)**; *Tolle v. Carroll Touch, Inc.*, **23 F.3d 174, 178 (7th Cir. 1994)**. "[Nonmovant's] own uncorroborated testimony is insufficient to defeat a motion for summary judgment." *Weeks v. Samsung Heavy Indus. Co.*, **126 F.3d 926, 939 (7th Cir. 1997)** . Further, the non-moving party's own subjective belief does not create a genuine issue of material fact. *Chiaramonte v. Fashion Bed Group, Inc.*, **129 F.3d 391, 401 (7th Cir. 1997)**.

    **B. Dead Man's Act**

As an initial matter, Plaintiff asserts in her response that Defendant Clemons is barred from testifying regarding the sequence of events surrounding the shooting pursuant to the **Illinois Dead Man's Act** unless "as part of plaintiff's case-in-chief, the estate offers testimony about the sequence of shots or the actions of Mr.

3

Clemons then, and only then, can Mr. Clemons refute such testimony." (Doc. 32, p. 4.)  The **Dead Man's Act** provides that an adverse party shall not be allowed to testify as to any conversation or to any event which took place in the presence of the deceased unless a person testifies on behalf of the decedent's representative as to any conversation or event – only then may an adverse party testify concerning the same conversation or event. **735 ILCS 5/8-201**.

Defendants counter that Plaintiff waived the protections of the Act when she included affidavits from Frederick and Barry Bonner, Jr., Decedent's sons, describing conversations and events surrounding the shooting of the Decedent in her brief in opposition to summary judgment.  Defendants argue that Plaintiff cannot use the Act as both a shield and a sword.  The Court agrees.

Although Plaintiff seems to suggest that she may only waive the protections afforded under the Act during trial, many courts have found that the Act is also applicable within the context of a summary judgment proceeding.  ***See Brown, Udell and Pomerantz, Ltd. v. Ryan*, 308 Ill.Dec. 193, 369 Ill.App.3d 821, 861 N.E.2d 258 (App. 1 Dist. 2006);** *Groce v. South Chicago Community Hosp.*, **218 Ill.Dec. 453, 282 Ill.App.3d 1004, 669 N.E.2d 596 (App. 1 Dist. 1996)(rehearing denied);** *Rerack v. Lally*, **182 Ill.Dec. 193, 241 Ill.App.3d 692, 609 N.E.2d 727 (App. 1 Dist.1992)(appeal denied) 186 Ill.Dec. 393, 151 Ill.2d 577, 616 N.E.2d 346 (holding that the trial court did not err in applying the Dead Man's Act within the context of a summary judgment proceeding).**

Had Plaintiff asserted that Defendant Clemons' testimony related to the events surrounding the shooting were prohibited under the Act and offered no other individual's testimony regarding the events in her own response, then the Court would have been required under the Act to disregard Clemons' testimony about the events involving the Decedent.  Instead, Plaintiff offered the affidavits of the Decedent's sons regarding the events that occurred before, during, and after the shooting on the evening of November 13, 2005.  This testimony clearly falls under the waiver section of the Act.  Plaintiff may not offer this testimony to defeat Defendants' motion for summary judgment and at the same time attempt to bar Defendant Clemons' testimony regarding the same event.  The Court finds that Plaintiff waived the protections of the **Dead Man's Act**.

### C.  Factual Disputes

Defendants maintain that there are no genuine material disputes. Defendants' motion for summary judgment is supported by an affidavit of Officer Clemons, which recounts his version of the events surrounding the shooting of Decedent. (Doc. 24, Ex. 1.)  In his affidavit, Clemons states that on the night in question[1] he was employed by Union Pacific Railroad Company as a railroad policeman and that he was patrolling areas of railroad property.  Clemons further states that in the course of patrolling the Springfield Subdivision in East St. Louis he observed a male, first sitting in a Lexus and later standing on the street.

---

[1] The affidavit actually states that the events occurred on November 14, 2005.

According to Clemons, this male, who later was identified as Barry Bonner, pointed a shotgun and then shot at Clemons' car. The shot did not hit Clemons' car. At that point, Clemons maintains that the Decedent was 35-40 feet away. Clemons states that he struggled to free himself from his seatbelt and exited his vehicle with his weapon, a 9 mm semiautomatic pistol. Clemons maintains that the Decedent was still in possession of the firearm and was pointing it at Clemons. Clemons states, "I was in fear of my life and fired twice at the subject. The subject fell down, out of sight." (*Id.* at ¶¶ 31-32.) Clemons was driving an unmarked vehicle and did not identify himself to Barry Bonner as a railroad police officer. Defendants argue that under Illinois law, railroad police officers like Clemons are granted police powers. **80 ILCS 80/2**. As such. Clemons has the authority to make arrests and to use force, if necessary, when making such arrests.

Plaintiff does not dispute that Clemons, as a railroad police officer, has the authority to make arrests under Illinois law and to use force when making such arrests. But Plaintiff adamantly disagrees with Clemons' version of the events. In fact, Plaintiff suggests that everything outside of the fact that Barry Bonner was shot is in dispute. Plaintiff proffers the following testimony and evidence to dispute Clemons' version of the events. First, Plaintiff provides affidavits by two of Barry Bonner's sons who did not see, but heard the shooting. They each testified that they heard only one set of successive shots and that the shots did not sound like they were coming from close to the house. (Doc. 32, Exhibits B and C.) In addition, Plaintiff proffers the autopsy and toxicology reports (*Id.*, Exhibit D), which state that there

6

were gunshot wounds found on the anterior and posterior aspects of the abdominal region.  Plaintiff also attached the Illinois State Police Investigative Report documenting the Illinois State Police Forensic Science Lab Report (*Id.*, Exhibit F). The Report states that on the night of the shooting, a black Mossberg 500A 12 guage shotgun was found next to decedent's body.  The Report further states that no spent shell casing from the shotgun was found or located that night. Finally, the Report finds that a discharged shotgun shell was found in the chamber and seven rounds were found in the magazine well. (*Id.*)  Plaintiff specifically argues that two material facts are in dispute: 1) the timing between the gunshots and 2) whether Officer Clemons was under threat of imminent serious physical harm.

### D.  Analysis

Plaintiff brings her claim under the **Illinois Wrongful Death Act, 740 ILCS 180/1,** and, therefore, Illinois law applies.  Under Illinois law, "when an officer believes that a suspect's actions [place] him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force." ***Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002) (quoting *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988) (en banc));** *see also* **720 ILCS 5/7-5.**  In *Muhammed*, the Seventh Circuit held that this rule applies to cases brought under the **Fourth Amendment to the United States Constitution** and the **Illinois Wrongful Death Statute**.

There appears to be some disagreement upon whether there is any

difference between the definition of reasonable force as applied under the **Fourth Amendment** as compared to the **Illinois Wrongful Death Statute**. Plaintiff cites *Bell v. Irwin*, **321 F.3d 637 (7th Cir. 2003)** to argue that there is a difference. In *Bell* the Seventh Circuit attempted to illuminate the difference between a claim coming under the United States Constitution versus state common law:

> Plaintiffs seek to equate constitutional-tort litigation to common-law tort litigation, in which negligence is a matter of degree to be resolved by a jury even if all of the facts have been stipulated, provided that a reasonable argument may be made both for or against the view that the defendant was negligent. Here is where the phrase "constitutional tort" may mislead, for the Constitution is not a form of tort law. It creates legal rules. Permitting the jury freedom to determine for itself whether particular conduct was reasonable within the meaning of the fourth amendment would introduce the ex post reassessment that Graham decried. Under the Constitution, the right question is how things appeared to objectively reasonable officers at the time of the events, not how they appear in the courtroom to a cross-section of the civilian community. . . .

*Id.* **at 641.** However, the question of whether the force used was reasonable is only reached at the summary judgment stage if there are no material facts in dispute. "When material facts are in dispute, then the case must go to a jury, whether the argument is that the police acted unreasonably because they lacked probable cause, or that they acted unreasonably because they responded overzealously and with too little concern for safety." *Id.*

In the present case, the Court finds that there are genuine disputes regarding material facts. Although Defendants claim that Officer Clemons' affidavit is uncontradicted, the Court finds that simply not to be true. First, Officer Clemons

claims that the Decedent shot at him and that he shot back twice eight seconds later. The affidavits submitted by the Decedent's sons contradict Clemons' testimony. Decedent's sons claim that they heard only one round of shots and that the shots did not sound like they were coming from close to their house. This testimony clearly calls Officer Clemons' testimony into question. Obviously, the Court may not engage in credibility determinations at this stage. The timing and sequence of shots bears on the question of whether the deadly force used by Officer Clemons was reasonable under the circumstances. This fact is material to the disposition of this case.

In addition, Officer Clemons' testified that the decedent had his shotgun aimed at Clemons prior to the second shot[2] and that the decedent never turned to run away. However, the autopsy report appears to contradict this testimony. The decedent had a gunshot wound in the gluteal region. This raises another material factual dispute.

These two material disputes are enough to defeat Defendant's motion for summary judgment. The Court need not consider the inferences raised by the

---

[2] Officer Clemons' testimony during a deposition was unequivocal on this point:

Q: I know you didn't, but I mean, you did – you were able to observe his physical reaction to the shot. Was there any, or was the gun still trained on you when you fired a second –
A: – The gun was still trained on me. It was still trained on me.
Q: For the second shot?
A: For the second shot.
Q: Okay, you're absolutely certain of that?
A: I'm absolutely certain.

(Doc. 32, Ex. A, p. 81:13 - 81:22.)

9

evidence that the spent shell casing was still in the chamber and that the shotgun had never been re-cocked. These are issues the jury will have to consider.

### V. Conclusion

For the foregoing reasons, the Court finds that material factual disputes exist. Therefore, the Court **DENIES** Defendants' motion for summary judgment..

**IT IS SO ORDERED.**

Signed this 24th day of September, 2007.

/s/      DavidRHerndon
**United States District Judge**